**GMAC COMMERCIAL MORTGAGE CORPORATION, Plaintiff,**

v.

**LASALLE BANK NATIONAL ASSOCIATION, Defendant.**

**No. 02 CIV. 9614(RMB).**

United States District Court, S.D. New York.

Dec. 26, 2002.

H. Peter Haveles, Esq., Cadwalder, Wichersham & Taft, New York City, for plaintiff.

Eric Lindemann, Esq., New York City, for defendant.

## ORDER

BERMAN, District Judge.

### I. Background

This commercial matter was initially filed on November 22, 2002 before the Honorable Ira Gammerman in the Supreme Court of the State of New York, New York County. On November 26, 2002, at an initial conference in the state court proceeding, Justice Gammerman issued a temporary restraining order "toll[ing] the time" that GMAC Commercial Mortgage Corporation ("Plaintiff" or "GMAC") has to cure alleged "events of default" under certain agreements between GMAC and LaSalle Bank National Corporation ("Defendant" or "LaSalle Bank").[1] On December 3, 2002, Defendant removed the case to this Court, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. *See* Notice of Removal dated December 3, 2002 ("This court has jurisdiction over this matter because (i) there is complete diversity between the parties and (ii) the amount in controversy ... exceeds ... $75,000,000.").

On December 5, 2002, Plaintiff moved in this court ("Plaintiff's Motion"), presumably pursuant to 28 U.S.C. § 1447(c), for a remand to state court (and for attorneys' fees and costs), arguing that LaSalle Bank was "barred" from filing a Notice of Removal because it "expressly and unambiguously waived its right to remove this action or otherwise to contest [Plaintiff's] choice

1. In connection with the issuance of certain securities, Enterprise Mortgage Acceptance Company, LLC ("EMAC"), as servicer, LaSalle Bank, as loan pool trustee, and ABN AMRO Bank, as fiscal agent, entered into three so-called Loan Pool Pooling and Service Agreements (collectively, "PSAs") dated June 1, 1998, March 1, 1999 and February 1, 2000, respectively. Plaintiff's Motion dated December 5, 2002 at 2–3. On June 1, 1998, March 1, 1999 and February 1, 2000, written indenture agreements ("Indenture Agreements") were executed between LaSalle Bank, as Indenture Trustee, and, as Issuer, EMAC. *See* Indenture Agreements, Ex. C to Affidavit of Michael Evans dated December 13, 2002. Pursuant to a written agreement, dated May 1, 2001, between GMAC and EMAC, GMAC succeeded EMAC as servicer under the PSAs. Plaintiff's Motion at 3.

of the State of New York, New York County as the forum for this action."[2] Plaintiff's Motion at 4. Plaintiff cites to the forum selection clause contained in (each of) the Indenture Agreement(s) ("Forum Selection Clause"), which provides:

> Any action or proceeding against any of the parties hereto relating in any way to this Indenture or any Note or Participating Interest or the Collateral may be brought and enforced in the courts of the State of New York sitting in the borough of Manhattan or of the United States District Court for the Southern District of New York, and the Owner Trustee on behalf of the Issuer and the Indenture Trustee both irrevocably submit to the jurisdiction of each such court in respect of any such proceeding. The Owner Trustee on behalf of the Issuer and the Indenture Trustee both hereby waive, to the fullest extent permitted by law, any right to remove any such action or proceeding by reason of improper venue or inconvenient forum.

§ 12.11 of Indenture Agreements.[3]

On December 17, 2002, Defendant opposed Plaintiff's Motion ("Defendant's Opposition") claiming that Defendant's "right to remove [is limited] only with respect to assertions of improper venue or forum

nonconveniens [and] neither of those bases has been asserted." Defendant's Opposition at 2. On December 20, 2002, Plaintiff filed a reply ("Plaintiff's Reply").

The issue for decision is whether Defendant has waived its right to remove the case to this Court or, as stated by Plaintiff, whether Defendant "irrevocably submitted" to the jurisdiction of the state Supreme Court initially chosen by Plaintiff.[4] *Id.*

By letter dated December 13, 2002, ORIX Capital Markets, LLC ("ORIX") requests leave to file a motion to intervene in this action and also argues against remand.[5] Letter to this Court from ORIX dated December 13, 2002 ("ORIX has a direct, substantial and legally protectable interest which may be impaired in this case ... [and] ORIX should be permitted to intervene in this action as of right."). In a subsequent letter to the Court dated December 20, 2002, ORIX argues that Plaintiff's Motion should be denied because "GMAC is not a party to the [Indenture Agreements], and since the forum selection provision is only in the [Indenture Agreements], it cannot be relied upon by GMAC to seek remand of this case to State Court." Letter to this Court from ORIX dated December 20, 2002.[6]

---

**2.** Plaintiff alleges that Defendant removed this action "to exploit the differences between the case law in the New York state courts and the Second Circuit with respect to a party's right to a preliminary injunction to toll the time to cure an alleged default under a contract." *Id.* at *2.

**3.** In its initial moving papers, Plaintiff appeared to rely upon the last sentence of the Forum Selection Clause which refers to waiver "of any right to remove such action ...." However, in its Reply papers, Plaintiff clearly retreats from this position, stating that the word "remove" is used only "in a non-technical sense." *See* Plaintiff's Reply at 3 ("The sentence constitutes merely a waiver of the right to challenge venue or choice of forum .... The draftsmen used the word 'remove' in

a non-technical sense, as a litigant does not have a statutory right to remove due to an improper venue or improper forum.").

**4.** Neither party appears to contest that this Court has diversity jurisdiction. Plaintiff's Motion at 1 ("[Defendant] is able to plead the necessary jurisdictional facts for diversity.")

**5.** ORIX "is the owner of approximately $30.5 million of bonds in the EMAC Owner Trust, Series 1998–1 and EMAC Owner Trust, Series 2000–1." Letter to this Court from ORIX dated December 20, 2002.

**6.** ORIX also argues that "removal to this [C]ourt was not based upon improper venue or inconvenient forum" and that this Court has diversity jurisdiction. *Id.*

**For the reasons set forth below, the Court denies Plaintiff's Motion to remand.**

## II. Analysis

■ Plaintiff argues that it had the right to elect to sue in either state court or Federal court under the first sentence of the Forum Selection Clause and that the phrase "irrevocably submit" "constitutes a mandatory submission to the court chosen by [P]laintiff." [7] Plaintiff's Reply at 3. Defendant counters that the Forum Selection Clause "does not compel [Defendant] to accept the jurisdiction in which [Plaintiff] chose to initiate this action, nor does it in any way preclude [Defendant] from exercising its right to remove the action to this [Court] . . . ." The Forum Selection Clause "does not provide for 'exclusive jurisdiction' and does not permit one party to control the choice of forum." Defendant's Opposition at 3, 6.

■ Similar issues have been litigated before. *See, e.g., Blanco v. Banco Industrial de Venezuela,* 997 F.2d 974, 976 (2d Cir.1993); *Karl Koch Erecting Co. v. New York Convention Ctr. Development Corp.,* 838 F.2d 656 (2d Cir.1988). "When a forum selection clause specifies only the jurisdiction, 'the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'" *Congress Fin. Corp. v. Bortnick,* No. 00 Civ. 6361, 2000 WL 1634248, at *1 (S.D.N.Y. Oct. 31, 2000). "An agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion. . . or it leaves it in the control of one party with power to force on its own terms the appropriate forum." *City of New York v. Pullman,* 477 F.Supp. 438, 442 n. 11 (S.D.N.Y.1979). "The normal construction

of the jurisdiction rules includes a presumption that, where jurisdiction exists, it cannot be ousted or waived absent a clear indication of such a purpose. . . ." *Id.* at 443.

There is no such "specific language of exclusion" here. Plaintiff argues that the decision of the United States Court of Appeals for the Eleventh Circuit in *Snapper Inc. v. Redan,* 171 F.3d 1249 (11th Cir.1999) is "directly on point." Plaintiff's Motion at 5. In *Snapper,* the forum selection clause provided that a suit "may be brought in the courts of the State of Georgia or the United States District Court, Northern District of Georgia, Atlanta Division, all as [plaintiff] may elect. . . . [defendant] submits to each such jurisdiction, hereby expressly waiving whatever rights may correspond to it by reason of its present or future domicile." *Snapper,* 171 F.3d at 1260. The Eleventh Circuit determined that the phrase "may elect" gave plaintiff "an absolute right to choose the forum." *Id.* at 1262 n. 24. In *Argonaut Partnership, L.P. v. Bankers Trustee Co.,* also cited by Plaintiff, the forum selection clause provided that "the parties are subject specifically to the jurisdiction and authority of the courts of [Guadalajara] or [New York], at the choice of the plaintiff, waiving any other jurisdiction that might correspond by virtue of their present or future domiciles." Nos. 96 Civ.1970, 2222, 1997 WL 45521, at *13 (S.D.N.Y. Feb. 4, 1997) (Mukasey, J.). The court in *Argonaut* focused on the phrase "at the choice of the plaintiff." *Id.* ("Although at first glance the clause seems permissive . . . it adds the words 'at the choice of the plaintiff.'. . . If, once the plaintiff chooses a forum, the defendant could nevertheless force transfer of the suit to the other forum, the words 'at the choice of the plaintiff' would be superfluous.").

---

7. Thus, "[Defendant] is foreclosed from challenging the jurisdiction of the court or to do anything to cause the case to be taken from the jurisdiction of either court." *Id.*

In this case, unlike *Snapper* and *Argonaut*, the Forum Selection Clause is permissive, as it was found to be in *John Boutari & Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors, Inc.*, 22 F.3d 51, 54 (2d Cir.1994); *Blanco*, 997 F.2d at 976, 979; and *Bortnick*, 2000 WL 1634248, at *2. Where, as here, an action "may" be brought in either of two courts or "it could be brought in any other court where jurisdiction might lie as a matter of law," *Bortnick*, 2000 WL 1634248, at *2, and where, as here, the parties "irrevocably submit to the jurisdiction of each such court," the meaning is not exclusive but, rather, is "permissive." *See Blanco*, 997 F.2d at 976, 979 (forum selection provision stating that "[Both parties] agree that any legal action or proceeding... may be brought in [listed jurisdictions] ... [and] irrevocably submit to the jurisdiction of each such court" is "properly construed as a permissive consent-to-jurisdiction provision, and not a mandatory and exclusive forum selection clause.")

The Forum Selection Clause does not contain clear language of election, vesting in Plaintiff the right to choose a particular court, *see Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1042–43, 1047 (11th Cir.2001) (finding that "defendant waiv[ed] its right to remove" where forum selection clause provided that "[defendant], at the request of [plaintiff],will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court

jurisdiction"); *AGR Financial v. Ready Staffing, Inc.*, 99 F.Supp.2d. 399, 403 (S.D.N.Y.2000) (remanding case where both "specific language of exclusivity ['such jurisdiction shall be exclusive'] and the power of one party to force its choice of forum upon defendants ['as plaintiff may elect']" exist). Nor does the Forum Selection Clause contain specific language of exclusion. *See Karl Koch Erecting*, 838 F.2d at 659 (finding exclusive jurisdiction and barring removal when clause provided that "no action or proceeding shall be commenced by [plaintiff] against [defendant] except in the Supreme Court of the State of New York"); *Thyssen, Inc. v. M/V ALPHA JUPITER*, No. 96 Civ. 8734, 1997 WL 882595 (S.D.N.Y. Aug. 15, 1997) (forum selection clause stating "all disputes ... shall be determined by the court in People's Republic of China" creates exclusive jurisdiction).[8]

ORIX also argues that Plaintiff is not a party to the Indenture Agreements, which contain the Forum Selection Clause, *id.* at *2, and, thus, claims that Plaintiff cannot rely upon the Forum Selection Clause to seek remand of this case. *Id.* Plaintiff submits, and Defendant does not dispute, that "[h]ere, the Indenture Agreement and the Loan Pool PSAs were executed and signed by the same parties on the same date, all as part of the same transaction. Thus, the documents form one integrated agreement. As integrated agreements, the forum selection clause which appears in the Indenture Agreement applies to an action upon the corresponding Loan Pool PSAs." Plaintiff's Motion at 5 n. 4.[9]

---

**8.** The Forum Selection Clause here more closely resembles the forum selection clause in *Bortnick,* which provided, "each of Guarantors hereby irrevocably consents and submits to the non-exclusive jurisdiction of the Supreme Court of the State of New York in New York County and the United States District Court for the Southern District of New York and waives any objection based on ven-

ue of forum non conveniens ...." 2000 WL 1634248, at *1.

**9.** It appears that both Plaintiff and Defendant intended to be bound by the Forum Selection Clause. *See, e.g., Nat'l Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 204 (2d Cir.1989) ("Two separate written agreements executed at the same time may be considered in law as

## Intervention

ORIX submits that it "should be permitted to intervene ... as of right," because "it is clear that ORIX has a direct, substantial, and legally protectable interest" in this case, "a determination as to whether an Event of Default has occurred ... may arguably bar the bondholders, including ORIX, from challenging the result," and "[Defendant] cannot adequately represent the interests of bondholders." Letter to the Court dated December 13, 2002 at 1–2. In a letter dated December 16, 2002, Plaintiff responds that ORIX "is contractually barred from intervening in this action." *See* Letter to the Court from GMAC, dated December 16, 2002 at 2 ("Under Section 7.3. of the PSAs, only the trustee [LaSalle Bank] may pursue litigation regarding an event of a default."). ORIX replies that Section 7.3 of the PSA "is inapplicable on its face," and "does not bar a bondholder from commencing litigation much less exclude ORIX or any other bondholder from seeking to intervene in an action." *See* Letter to the Court from ORIX dated December 17, 2002.

The Court directs the parties to pursue resolution of this issue ("on consent") prior to the conference scheduled below. If the parties are unable to resolve the issue by that date, the Court will set a motion schedule.

## Attorneys' Fees and Costs

In view of the Court's determination that the action may be removed, Plaintiff's request for attorneys' fees and costs incurred as a result of the removal is denied.

## III. Conclusion and Order

For the reasons stated above, the Court denies Plaintiff's Motion to remand this action to state court. All orders, including the temporary restraining order issued on November 26, 2002 by Justice Gammer-

one agreement, but only if the parties so in-

man, remain in effect. The parties are directed to appear at a status/scheduling conference with the Court on January 15, 2003 at 3:00 PM, in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. **The parties are further directed to engage in good faith settlement negotiations prior to the conference.**